DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc., Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,<br><br>Plaintiff,<br><br>v.<br><br>HARVEY TURELL, individually, as Trustee of the HARVEY AND LINDA TURELL FAMILY TRUST, and as Trustee of the HARVEY TURELL 2015 QUALIFIED PERSONAL RESIDENCE TRUST DATED AUGUST 6, 2015; and LINDA TURELL, individually, and as Trustee of the LINDA TURELL 2015 QUALIFIED PERSONAL RESIDENCE TRUST DATED AUGUST 6, 2015,<br><br>Defendants. | Case No. 2:15-cv-06720-SJO-FFM<br><br>FIRST AMENDED COMPLAINT FOR FRAUDULENT TRANSFER AND UNJUST ENRICHMENT<br><br>Judge: Hon. S. James Otero |

Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), hereby brings the following Complaint against the above-captioned Defendants and alleges, on behalf of the Receivership Entities, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. sections 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Securities and Exchange Commission ("Commission") enforcement action styled as *Securities and Exchange Commission v. National Automated Systems, Inc., et al.*, United States District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC Action").

2. This Court may exercise personal jurisdiction over the above-captioned Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and 28 U.S.C. sections 754 and 1692.

3. Venue in the Central District of California is proper under 28 U.S.C. section 1391 because this action is an ancillary proceeding to the SEC Action and because the Receiver was appointed in this District pursuant to the Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver entered by this Court in the SEC Action on October 29, 2014 ("Preliminary Injunction").

## II. PARTIES

4. The Receiver is the duly appointed permanent receiver for the Receivership Entities and was appointed permanent receiver for the Receivership Entities pursuant to the Preliminary Injunction. Among other things, the

Preliminary Injunction calls for the Receiver to recover and marshal, for the benefit of creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities. The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5. On information and belief, Harvey Turell, individually and as Trustee of the Harvey and Linda Turell Family Trust, and Linda Turell are citizens and residents of Los Angeles County, California (collectively, "Turell Defendants"). Defendants are each a recipient of assets of the Receivership Entities as described further herein.

6. On information and belief, the qualified personal residence trusts identified as "Harvey Turell, Trustee of the Harvey Turell 2015 Qualified Personal Residence Trust dated August 6, 2015," (the "Harvey Turell QPRT") and "Linda Turell, Trustee of the Linda Turell 2015 Qualified Personal Residence Trust dated August 6, 2015" (the "Linda Turell QPRT") (together, the "Turell QPRT Defendants"), are trusts created under California law and applicable statues and regulations governing qualified personal residence trusts. The Turell QPRT Defendants each received assets fraudulently transferred to them to avoid the claims of creditors as described further herein.

### III. FACTUAL ALLEGATIONS

#### A. The Purported Business of the Receivership Entities and the Commencement of the SEC Action

7. As alleged by the Commission in the SEC Action, NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price

paid for the ATMs per year. The Receivership entities also paid referral fees to investors and other agents who recruited new investors to purchase ATMs.

8. In actuality, the Receivership Entities did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors. Thus, NASI operated a classic Ponzi scheme.

9. On or about September 17, 2014, the Commission initiated the SEC Action against the Receivership Entities and their principals Joel Gillis and Edward Wishner, alleging violations of federal securities laws. The Commission petitioned for the Receiver's appointment, and on September 30, 2014, and October 29, 2014, this Court entered orders appointing the Receiver, first on a temporary basis and then as permanent receiver for the Receivership Entities.

### B. The Receiver's Authority and Investigation Pursuant to His Appointment

10. Pursuant to the terms of his appointment, the Receiver is vested with exclusive authority and control over the assets of the Receivership Entities. Specifically, Article XII of the Preliminary Injunction vests the Receiver with the "full powers of an equity receiver, including, but not limited to . . . full power to institute, pursue, and prosecute all claims and causes of action . . ."

11. The Receiver's investigation to date supports and confirms the Commissions allegations in the SEC Action, including that NASI operated a Ponzi scheme, sold fictitious ATMs to investors and made rent and referral fee payments to investors from funds raised from other investors. Defendants Gillis and Wishner filed answers to the SEC's complaint in which they admit the facts supporting the SEC's Ponzi scheme allegations.

### C. Criminal Indictment and Guilty Pleas

12. On December 16, 2014, Gillis and Wishner were arrested and charged with mail fraud, wire fraud, conspiracy, and aiding and abetting. *United States v. Gillis, et al.*, C.D. Cal. Case No. 14-CR-00712-SJO. Gillis and Wishner waived indictment, surrendered their passports, and were released on bail. On January 13, 2015, and January 21, 2015, respectively, Wishner and Gillis plead guilty to all four counts of the criminal information. In connection with Gillis' guilty plea, a statement of facts signed by Gillis that supports the guilty plea was filed by the government ("Statement of Facts"). As part of his guilty plea, Gillis stated under oath that the facts in the Statement of Facts were true. The Statement of Facts is attached hereto as Exhibit A.

13. The Statement of Facts is fully incorporated herein by reference. The facts stated therein are included in this complaint as though fully restated and alleged herein.

### D. The Fraudulent Transfers to the Turell Defendants From the Receivership Entities

14. Attached hereto as Exhibit B is a schedule of bank transfers from the Turell Defendants to NASI and from NASI to the Turell Defendants. As the schedule reflects, the net amount received by the Turell Defendants ("Profit Amount") is calculated by subtracting (a) transfers from NASI to the Turell Defendants ("Payments from NASI") from (b) transfers from the Turell Defendants to NASI ("Deposit Amount"). The Turell Defendants' Profit Amount is $864,238.[1]

15. The Turell Defendants had no business dealings with NASI apart from transactions relating to the purchase and leasing of fictitious ATMs and provided no services or other value to NASI other than amounts paid for the fictitious ATMs.

---

[1] All transfers from Payments from NASI occurring (a) after Defendant received payments equal to the Deposit Amount, and (b) more than seven years prior to the date of filing this Complaint have been excluded from the calculation of the Profit Amount.

### E. Harvey Turell's and Linda Turell's Fraudulent Transfers of Property to Hinder, Delay and Defraud Creditors

16. On information and belief, defendants Harvey Turell and Linda Turell purchased the real property located at 4374 Park Monte Nord, Calabasas, California ("Property") on or around July 24, 1997 and took title to the property as husband and wife as joint tenants.

17. After being informed of the Receiver's claims for disgorgement of profits in early August 2015, defendants Harvey Turell and Linda Turell immediately took action to divide and transfer interest in the Property to separate qualified personal residence trusts in order to avoid the claims of creditors, including the Receiver's claims.

18. In particular, and on information and belief, defendants Harvey Turell and Linda Turell executed a quitclaim deed on or about August 6, 2015, which split their jointly held interest in the Property into two, separate 50% interests, to be held by each as his and her separate property. The separate interests in the Property were then simultaneously transferred by defendants Harvey Turell and Linda Turell to separate qualified personal residence trusts held in their names, specifically the Turell QPRT Defendants.

19. On information and belief, defendants Harvey Turell and Linda Turell conveyed the Property to their Turell QPRT Defendants with actual intent to hinder, delay and defraud their creditors, and to further frustrate any asset recovery efforts their creditors may undertake.

20. On information and belief, defendants Harvey Turell and Linda Turell had actual knowledge of the Receiver's claims against them as alleged herein at the time they converted their jointly-held interest in the Property into separate interests and transferred those separate interests in the Property to the Turell QPRT Defendants.

21. On information and belief, defendants Harvey Turell and Linda Turell received no money or other consideration in exchange for the transfers of their interests in the Property to the Turell QPRT Defendants, and thus defendants Harvey Turell and Linda Turell received no reasonably equivalent value in exchange.

22. On information and belief, defendants Harvey Turell and Linda Turell in their capacity as trustee of the Turell QPRT Defendants did not receive the separate interest in the Property in good faith, and the transfers were conducted by defendants Harvey Turell and Linda Turell to evade the claims of their creditors, including the claims alleged herein by the Receiver.

23. On information and belief, the Turell Defendants transferred the Property to the Turell QPRT Defendants at a time when they were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction and they intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

24. On information and belief, the Turell QPRT Defendants did not receive the transferred interests in the Property in good faith because the transfers were made by defendants Harvey Turell and Linda Turell with actual knowledge of the claims of creditors, including the Receiver's claims alleged herein, and the transfers were made for the purpose of shielding the Property from such claims.

**COUNT I – FRAUDULENT TRANSFER (as against the Turell Defendants)**

25. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 24, inclusive, hereinabove set forth.

26. Over the course of its pre-receivership operations, NASI paid the Profit Amount to the Turell Defendants with the intent to hinder, delay, or defraud NASI's creditors. Such payments were made from the proceeds of the Ponzi scheme which were generated from investors in the scheme.

27. The Receivership Entities received nothing of value in exchange for the payments that comprise the Profit Amount.

28. At the time the payments comprising the Profit Amount were made to the Turell Defendants, NASI was engaged in or about to engage in business transactions for which its remaining assets were unreasonably small in relation to the business or transaction.

29. NASI was insolvent, or became insolvent shortly after the subject payments comprising the Profit Amount were made to the Turell Defendants.

30. NASI intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

31. As a consequence, the full Profit Amount is an actual and constructive fraudulent transfer under California's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code section 3439, *et seq.*, and is subject to immediate disgorgement to the Receiver.

**COUNT II – UNJUST ENRICHMENT (as against the Turell Defendants)**

32. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 31, inclusive, hereinabove set forth.

33. As described above, NASI paid the Profit Amount to the Turell Defendants in connection with the transactions relating to the purchase and leasing of fictitious ATMs. Such payments were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

34. The Turell Defendants benefitted by way of receipt of the Profit Amount and it is unjust and inequitable for the Turell Defendants to retain this benefit at the expense of the Receivership Entities and/or the other defrauded investors and creditors of the receivership estate.

35. The Turell Defendants have no legitimate claim to the Profit Amount as it represents fictitious profits paid to the Turell Defendants in furtherance of NASI's

1 fraudulent Ponzi scheme and in order to entice new investors and further perpetuate
2 the scheme.

3     36.    The Receivership Entities received no value or consideration in
4 exchange for the Profit Amount.

5     37.    The Turell Defendants have thus been unjustly enriched in the amount
6 of the Profit Amount, which is subject to immediate disgorgement to the Receiver.

### COUNT III – Fraudulent Transfer (as against defendants Harvey Turell, Linda Turell, and the Turell QPRT Defendants)

9     38.    The Receiver incorporates herein each and every allegation contained
10 in Paragraphs 1 through 37, inclusive, hereinabove set forth.

11     39.    As described above, defendants Harvey Turell and Linda Turell had
12 actual knowledge of the Receiver's claims at the time they transferred their interests
13 in the Property to the Turell QPRT Defendants.

14     40.    Defendants Harvey Turell and Linda Turell transferred their interests in
15 the Property to the Turell QPRT Defendants with the intent to hinder, delay or
16 defraud their creditors.

17     41.    Defendants Harvey Turell and Linda Turell transferred the Property to
18 the Turell QPRT Defendants at a time when they were engaged or were about to
19 engage in a business or a transaction for which their remaining assets were
20 unreasonably small in relation to the business or transaction and they intended to
21 incur, or believed or reasonably should have believed they would incur, debts
22 beyond their ability to pay as they became due.

23     42.    Defendants Harvey Turell and Linda Turell received nothing of value
24 in exchange for the transfers of their interests in the Property to the Turell QPRT
25 Defendants.

26     43.    Defendants Harvey Turell's and Linda Turell's transfers of interest in
27 the Property to the Turell QPRT Defendants were not made in good faith because
28 the transfers were made with actual knowledge of the claims of creditors, including

the Receiver's claims alleged herein, and the transfers were made for the purpose of avoiding such claims.

44. As a consequence, the transfers of interests in the Property to the Turell QPRT Defendants are actual and constructive fraudulent transfers under California's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code section 3439, *et seq.*, and should be set aside and declared void to the extent necessary to satisfy the Receiver's claim totaling the Profit Amount.

## **PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against the Defendants as follows:

**On Count I:**

(a) For a judgment against Defendants avoiding the transfers from NASI to Defendants comprising the Profit Amount; and

(b) For an order deeming the Profit Amount paid to Defendants to be held in constructive trust for the benefit of the Receivership Entities; and

(c) For an order directing Defendants to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(d) For such other and further relief as the Court may deem proper.

**On Count II:**

(a) For a judgment against Defendants in the amount of the Profit Amount, plus prejudgment interest and costs; and

(b) For an order deeming the Profit Amount paid to Defendants to be held in constructive trust for the benefit of the Receivership Entities; and

(c) For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(d) For such other and further relief as the Court may deem proper.

**On Count III:**

(a) For a judgment against the Turell QPRT Defendants setting aside and avoiding defendants Harvey Turell's and Linda Turell's transfers of their interests in the Property.

Dated: December 15, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
TED FATES
TIM C. HSU

By: /s/ Tim C. Hsu
TIM C. HSU
Attorneys for Receiver
WILLIAM J. HOFFMAN